IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL M. NGRIME, | ) | CASE NO. 8:07CV387 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| DOUGLAS COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment. (Filing No. 25.) As set forth below, the Motion is granted and this matter is dismissed with prejudice.

## I.  BACKGROUND

Plaintiff, Michael M. Ngrime ("Ngrime"), filed his Complaint in this matter on September 26, 2007. (Filing No. 1.) Ngrime later filed his Amended Complaint, which is the operative complaint in this matter. (Filing No. 11.) Summarized, Ngrime alleges that Defendant Douglas County discriminated against him, and ultimately terminated his employment, because of his race and national origin in violation of Title VII of the Civil Rights Act. (*Id.*)

On February 23, 2009, Defendant filed its Motion for Summary Judgment along with a Brief and an Index of Evidence to support the Motion. (Filing Nos. 25, 26, and 27.) After a lengthy extension of time, Ngrime filed a Brief in Opposition to the Defendant's Motion along with an Index of Evidence on June 16, 2009. (Filing Nos. 36 and 37.) The parties have not filed any other documents relating to the pending Motion for Summary Judgment.

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no

genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

The court has carefully reviewed the documents submitted by both parties. Defendant has submitted a statement of material facts and Plaintiff has responded to those facts. Further, both parties have submitted evidence authenticated by affidavit or sworn deposition testimony. In light of this, this matter is deemed fully submitted and the court adopts the following material facts.

## II.  RELEVANT MATERIAL FACTS

Background

1. Ngrime was employed as a nursing assistant at Douglas County's Health Center from February 4, 2004, through November 16, 2005. (Filing No. 11; Filing No. 27-6, Attach. 5, at CM/ECF pp. 4, 13.)

2. With respect to employee discipline decisions, Douglas County acted through its Administrator of the Health Center James C. Tourville ("Tourville") and its Director of Nursing Mary Powell ("Powell"). (Filing No. 27-2, Attach. 1, at CM/ECF pp. 1-2.)

3. No other employee of Douglas County was an authorized decision-maker with respect to Ngrime's employment or discipline decisions. (Filing No. 27-6, Attach. 5, at CM/ECF p. 9.)

Ngrime's Disciplinary Record

4. On March 9, 2005, Ngrime was counseled regarding complaints from coworkers that he was sleeping while on duty. His supervisor Mary Hosbein ("Hosbein") investigated and no formal discipline was imposed. Hosbein was unable to validate the reports that Ngrime was asleep. (Filing No. 27-19, Attach. 18, at CM/ECF pp. 3-4.)

5. Ngrime received a Written Reprimand on May 4, 2005, for sleeping on the job on April 8, 2005. Powell discussed the allegations of several coworkers with Ngrime, and imposed no discipline but did issue him a written reprimand in order to reinforce the policy that employees should be alert while on duty. (Filing No. 27-4, Attach. 3, at CM/ECF pp. 10-11; Filing No. 27-18, Attach. 17, at CM/ECF pp. 1-4.)

6. On June 30, 2005, Ngrime was given another Written Reprimand based on an incident which occurred on May 21, 2005. On that date, Ngrime moved a patient by himself to a different position in a wheelchair. Douglas County's policy and procedures required that this patient's physical condition necessitated that moves and transfers, and even repositioning, were to be done by multiple staff, rather than by a single employee. (Filing No. 27-17, Attach. 16, at CM/ECF pp. 1-5.)

7. Ngrime received a Documentation of Informal Discipline on July 12, 2005, for accumulated work attendance. Work attendance is governed by the Douglas County Health Center Attendance Policy. Under this policy, points are accumulated for being late for work, and for unexcused absences. Ngrime was late for work 21 times during April,

May, and June 2005. (Filing No. 27-4, Attach. 3, at CM/ECF p. 18; Filing No. 27-14, Attach. 13, at CM/ECF pp. 1-5.)

8. On August 4, 2005, Ngrime was counseled regarding inappropriate communication with a patient. When the patient first complained about Ngrime, Douglas County Administration officials suspected that patient abuse may be involved. However, patient abuse allegations were not validated. This patient abuse investigation revealed that Ngrime needed training regarding verbal and non-verbal communication with the patients, so Powell referred him for training. (Filing No. 27-4, Attach. 3, at CM/ECF pp. 19-20; Filing No. 27-15, Attach. 14, at CM/ECF pp. 1-5.)

9. Ngrime received discipline, in the form of a one day suspension, for sleeping on the job on September 3, 2005. This incident resulted from a coworker reporting that she saw Ngrime in the patients' dining room with his eyes closed, and holding a spoon with food in the air in front of a patient. (Filing No. 27-9, Attach. 8, at CM/ECF pp. 1-2; Filing No. 27-10, Attach. 9.)

The October 30, 2005 Incident and Ngrime's Termination

10. Douglas County terminated Ngrime's employment at the Health Center effective November 16, 2005. The reasons for Plaintiff's termination were set forth in a letter dated November 16, 2005 (the "Termination Letter"). (Filing No. 27-2, Attach. 1, at CM/ECF pp. 1-2.)

11. The reason for Plaintiff's termination, as set forth in the Termination Letter, was that Plaintiff violated Douglas County's safety regulations on October 30, 2005, when he again transferred a patient by himself when the patient's physical condition required two staff and a Hoyer Lift to transfer him (the "October 30, 2005 Incident"). (*Id.*)

4

12. The report of the October 30, 2005 Incident was made by a nursing assistant named Tia Kennedy ("Kennedy"). (Filing No. 27-11, Attach. 10, at CM/ECF p. 1.)

13. In responding to the allegations regarding the October 30, 2005 Incident, Powell was informed that Ngrime attempted to get another nursing assistant, Andrew Gaines ("Gaines"), to report that he had assisted Plaintiff in transferring the patient. After initially saying that he had assisted Ngrime, Gaines later recanted his report and said that he had lied, and that he did not assist Plaintiff in moving the patient. (Filing No. 27-5, Attach. 4, at CM/ECF pp. 17-19.)

14. Powell and others investigated the allegations surrounding the October 30, 2005 Incident. (*Id.* at CM/ECF pp. 16-19, 28-29.)

15. After a thorough investigation, Powell was unable to identify anyone who assisted Ngrime in transferring the patient on October 30, 2005. While Ngrime stated that Gaines assisted him, Gaines denied doing so. (*Id.* at CM/ECF pp. 17-19, 28-29.)

16. Powell's conclusion, after the investigation and the pre-termination hearing, was that Ngrime violated the lifting instructions for a patient, and was lying about it. Powell's notes to file contain the reasons for her decision to seek discipline. (*Id.* at CM/ECF pp. 28-29; Filing No. 27-13, Attach. 12, at CM/ECF pp. 1-3.)

17. Powell and Tourville were the decision-makers regarding any discipline Ngrime received as a result of the October 30, 2005 Incident, including his termination. (Filing No. 27-13, Attach. 12, at CM/ECF p. 3.)

18. Ngrime exercised his contractual and legal right to contest his termination through an appeal to the Douglas County Civil Service Commission. The appeal was heard on January 5, 2006. After hearing the evidence, including Ngrime's testimony, the

Civil Service Commission voted unanimously to uphold the termination. (Filing No. 27-3, Attach. 2, at CM/ECF pp. 1-4.)

### III. ANALYSIS

#### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

**B.     Plaintiff's Discrimination Claim**

Ngrime claims that he was terminated because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964. (Filing No. 11.) For the reasons stated below, Ngrime's discrimination claims fail because he has not presented a sufficient prima facie case of discrimination.

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment, a plaintiff can demonstrate unlawful discrimination through either direct or indirect evidence. *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008). Claims premised on indirect evidence are analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Because Ngrime offers no evidence of direct discrimination, the court will analyze his claims under the *McDonnell Douglas* framework.

    1.     Prima Facie Case

Summary judgment may be entered in a Title VII action "if any essential element of the *prima facie* case is not supported by *specific facts* sufficient to raise a genuine issue for trial." *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999) (emphasis added). Accordingly, to set forth a prima facie case, Ngrime must establish that: (1) he is a member of a protected group; (2) he was qualified for his position; (3) he was discharged; and (4) his discharge occurred in circumstances giving rise to an inference of discrimination.

*Johnson v. AT & T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005). Construing the evidence submitted by Defendant in a light most favorable to Ngrime, the court finds that the undisputed evidence establishes elements one through three of Ngrime's prima facie case. Thus, if he can show that the circumstances surrounding his termination give rise to an inference of discrimination, Ngrime has satisfied the first stage of the *McDonnell Douglas* analysis. However, Ngrime has not done so.

As set forth above, Ngrime was counseled or disciplined on no fewer than six occasions prior to the incident leading up to his termination. Ngrime's conduct resulting in these counseling sessions and discipline included sleeping on the job, numerous absences and late-arrivals to work, and inappropriate communications with patients. Notably, prior to the October 30, 2005 Incident, Ngrime was also disciplined for moving a patient by himself when that patient required at least two staff members for any move. (Filing No. 27-17, Attach. 16, at CM/ECF pp. 1-5.) This is the exact behavior Ngrime repeated on October 30, 2005, which led to his termination. Indeed, on October 30, 2005, Ngrime moved a patient by himself when that patient required at least two staff members and a Hoyer lift. Powell investigated the incident for several days, ultimately concluding that no other staff person assisted Ngrime in moving the patient. (Filing No. 27-4, Attach. 3, at CM/ECF pp. 28-29.) As set forth in the Termination Letter, Ngrime was terminated because of his long history of disciplinary problems, and because of the events of October 30, 2005. (Filing No. 27-2, Attach. 1, at CM/ECF pp. 1-2.)

Ngrime claims that the individuals who reported his many "transgressions" did not like him and harbored racial animus towards him. (Filing No. 36.) He further contends that these individuals repeatedly lied in reporting things to Powell. (*Id.*) There is no evidence

in the record supporting Ngrime's claims. Regardless, the question is not whether the decision-maker was "factually correct in determining" whether the employee engaged in conduct resulting in termination, but whether the decision-maker "honestly believed" that the employee engaged in the conduct. *Johnson*, 422 F.3d at 762-63; *see also Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 859 (8th Cir. 2008) (citing *Johnson* and noting that the defendant's "perception" of the plaintiff's conduct was the applicable inquiry). Thus, even if Ngrime's co-workers disliked him, and acted in concert to falsely report Ngrime's conduct over a period of nearly a year, the result is the same. Powell thoroughly investigated every allegation relating to Ngrime's misconduct. After investigation, Powell believed that Ngrime engaged in the reported conduct, including the conduct resulting in his termination. Powell may have been wrong, and Ngrime may disagree with Powell's decision or the truthfulness of allegations underlying them, but his evidence "must do more than raise doubts about the wisdom and fairness of [her] opinions and actions." *Hervey v. County of Koochiching*, 527 F.3d 711, 725 (8th Cir. 2008). There simply is nothing in the evidence before the court showing an inference of discrimination in the circumstances leading up to Ngrime's termination and he has therefore failed to set forth a sufficient prima facie case.

       2.     Similarly-Situated Allegations

A review of all of the evidence properly before the court shows that Ngrime's arguments regarding an "inference of discrimination" surrounding his termination relate primarily to other employees who were similarly situated but were treated differently with respect to job assignments. However, "the test for whether employees are similarly situated to warrant a comparison to the plaintiff is rigorous." *Cronquist v. City of*

*Minneapolis*, 237 F.3d 920, 928 (8th Cir. 2001). Indeed, Ngrime has the burden to show that the comparators are similarly situated in all relevant respects. *Riser v. Target Corp.*, 458 F.3d 817, 822 (8th Cir. 2006) (denying Title VII race discrimination claim where the plaintiff failed to show that comparators had similar jobs at similar locations and were cited for the same "shortcomings" as the plaintiff but were not disciplined). Indeed, Ngrime and his comparators must have dealt with the same supervisor, been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances. *EEOC v. Kohler Co.*, 335 F.3d 766, 776 (8th Cir. 2003). Again, Ngrime has submitted no evidence supporting his claims. Rather, the undisputed facts before the court do not clearly indicate who the comparators are, or whether they had similar training, job assignments, conduct, or discipline.

The only comparator mentioned in the evidence before the court is another employee, LaTia Mackey ("Mackey"). Like Ngrime, Mackey moved a patient by herself, even though the patient required two people for all moves. (Filing No. 27-7, Attach. 6, at CM/ECF pp. 3-4.) After an investigation, Mackey was given a one-day suspension for her violation. (*Id.*) Ngrime has not submitted any evidence regarding any "mitigating or distinguishing circumstances" relating to Mackey, and has also failed to submit any evidence regarding Mackey's supervisor, job assignments, training, or past disciplinary history. In particular, it is unclear whether Mackey had engaged in numerous other violations previous to this incident, as had Ngrime. In short, on the record before the court, Mackey is not a true comparator and, to the extent Ngrime's claims of race and national origin discrimination are based on "similarly situated" individuals, he offers nothing more than his opinion that Mackey was not treated similarly. To survive summary judgment,

Ngrime must substantiate his allegations with more than "speculation, conjecture, or fantasy." *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037 (8th Cir. 2004) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733-34 (8th Cir. 2003)). He has simply failed to do so. As such, the court finds that the evidence, taken in its entirety, and viewed in a light most favorable to Ngrime, is insufficient for a reasonable trier of fact to infer that race was a determinative factor in Defendant's decision to discharge Plaintiff.[1]

IT IS THEREFORE ORDERED that:

1.  Defendant Douglas County's Motion for Summary Judgment (Filing No. 25) is granted as set forth in this Memorandum and Order. All claims against Defendant are dismissed with prejudice;

2.  A separate judgment will be entered in accordance with this Memorandum and Order; and

3.  The Final Pretrial Conference, scheduled for August 18, 2009 at 10:00 a.m., is cancelled.

DATED this 12th day of August, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[1] Because Ngrime has failed to set forth a sufficient prima facie case of discrimination, the court need not proceed with the remainder of the *McDonnell Douglas* analysis. However, even if the court engaged in that analysis, and for the same reasons as set forth above, Ngrime has not shown that Defendant's legitimate nondiscriminatory reason for its employment decision was pretextual. *Bearden*, 529 F.3d at 831.

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.